# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# <u>WESTERN DIVISION</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) Case No. 7:24-CR-00079-ACA-JHE |
| | ) |
| **DONTERIO RAEKWON NICKSON** | ) |
| | ) |

## <u>PLEA AGREEMENT</u>

The Government and the defendant, **DONTERIO RAEKWON NICKSON,** hereby acknowledge the following plea agreement in this case:

## <u>PLEA</u>

The defendant agrees to (i) plead guilty to COUNT ONE of the **Indictment** filed in the above-numbered and -captioned matter; (ii) consent to forfeiture as described in section **XII** below; and (iii) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in section **VII**.

## TERMS OF THE AGREEMENT

I. **MAXIMUM PUNISHMENT**

The defendant understands that the maximum statutory punishment that may be imposed for **Possession of a Machinegun** in violation of Title **18**, United States Code, Section **922(o) and 924(a)(2)**, as charged in **Count One,** is:

- A. Imprisonment for not more than **10 years**;
- B. A fine of not more than **$250,000**, or,
- C. Both A and B;
- D. Supervised release of not more than **3** years; and
- E. A special assessment of **$100**.

II. **FACTUAL BASIS FOR PLEA**

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

On or between, January 21, 2024, and January 22, 2024, in Tuscaloosa County, Alabama, law enforcement officers were dispatched to three separate shootings. The first shooting took place on January 21, 2024, between 2:20-2:30 a.m. at the Brantwood Apartments. The second shooting occurred the same day at the Westlawn Plaza Apartments at 2:50 a.m. The third shooting was reported on January 22, 2024, and occurred at the Oakley Apartments. All three complexes are in Tuscaloosa

County, Alabama.

Deputy Hartley with the Tuscaloosa County Sheriff's Office (TCSO) was dispatched to the Brantwood Apartments. Hartley's investigation of the residence discovered two bullet holes in the wall next to the bed and a projectile in the complainant's purse. TCSO investigators also recovered fourteen spent .223 shell casings from outside the apartment building and a bullet fragment from the steps.

Tuscaloosa Police Officer Newberry was dispatched to the Westlawn Plaza Apartments on January 21, 2024. Upon arrival, Officer Newberry made contact with the resident, D.R., and observed damage to the home, including a bullet hole in the window and in the exterior wall. D.R. indicated that she believed the shooting came from the corner of 33rd Avenue and 36th Place. Newberry investigated the area referenced by D.R. and recovered fourteen spent .223 casings and two spent 9mm casings.

Tuscaloosa Police Officer Campbell was dispatched on January 22, 2024, at 9:56 P.M. to a possible shooting at the Oakley Apartments. The resident was not home, but Officer Campbell made contact with a complainant and observed a large number of bullet holes to the front of the apartment. Officer Campbell performed a welfare check of the residence and observed that numerous items inside the home had been struck by projectiles. Officer Campbell recovered a bullet fragment from the bed. Outside the apartment, Officer Campbell collected twenty-nine spent 5.56

shell casings.

Investigator Miller with the TCSO, Violent Crimes Section, took over the investigations. Investigator Miller received video footage from the Branscomb Apartments, showing two suspects walking around the apartment complex. One suspect was carrying an AR15-style rifle. Investigator Miller recovered a second video from Speedy Oil change showing a silver sedan traveling towards the Branscomb Apartments minutes before the first shooting. Investigator Miller later recovered a Facebook screenshot from the account of "Terio Nickson." The screenshot depicted a masked individual posing in front of the Branscomb Apartments mailboxes with two AR style rifles. Investigator Miller confirmed the Facebook account registered to "Terio Nickson" in fact belonged to Donterio Raekwon NICKSON. After reviewing this photo, Investigator Miller recovered a subsequent video from Branscomb Apartments that showed NICKSON and another individual exiting a 2019 Kia Optima, at the Branscomb apartments. The vehicle matched the silver sedan seen in the Speedy Oil Change video.

A BOLO alert was issued for NICKSON and the Kia Optima. Officer Hollis with Northport Police Department found NICKSON at the Knoll Circle apartments on January 23, 2024. NICKSON was driving the Kia Optima previously seen in the Brantwood video. Officer Hollis detained NICKSON and turned him over to a deputy with TCSO. Within the vehicle, officers observed an AR15-style rifle and a

black jacket matching the description of the suspect in plain view.

Investigator Miller obtained a state search warrant for the Kia Optima and recovered two AR15-style firearms, an extended magazine, and the black jacket NICKSON wore at the Branscomb Apartment Complex shooting. The firearms recovered were an Anderson Manufacturing, Model AM-15 (AM-15), and an American Tactical, Model Milsport (Milsport), multi-caliber rifle. Both firearms are currently in Tuscaloosa County Sheriff's Office possession, and it should be noted that the AM-15 also has an American Tactical upper receiver attached to it. ATF Special Agent Joel Smith visually observed the AM-15 and found that the firearm was modified using a metal device that interrupted the function of the disconnector, this disruption allowed the AM-15 to fire fully automatically. The modification allowed the firearm to be operated as a machinegun. The Milsport rifle was reported stolen on January 5, 2024, to the Greensboro Police Department.

Investigator Miller and SA Smith interviewed NICKSON. NICKSON waived his Miranda Rights in writing and confessed to committing all three of the shootings. NICKSON indicated he received the AM-15 firearm for a "gambling debt." NICKSON named the other shooter as well. NICKSON stated that he used the AM-15 knowing it had been modified and that the firearm was able to be fired fully automatic. NICKSON further informed Investigator Miller where he received the firearm with the machinegun conversion device and detailed possible schemes used

by NICKSON's affiliates to obtain more machinegun conversion devices.

Officers arrested NICKSON on state charges of Shooting into an Occupied Dwelling and Shooting into an Unoccupied Dwelling.

SA Joel Smith referred the firearm to the Tuscaloosa Police Department, Forensic Services Division, (FSD) for an examination of the machinegun conversion device and the AM-15 firearm. FSD concluded that the metal device was designed to be positioned in the lower unit of an AR-style rifle, where one leg of the device rests on the rear of the disconnector within the trigger group and the other rests on the floor of the lower unit below the rear take-down pin. When installed, the device interrupts the function of the disconnector allowing the firearm to be fired fully automatically. With this device inserted, the firearm's rate of fire is controlled only with the trigger. A removal of the device returns the firearm to a semi-automatic only function. The device does not require any modification to the trigger group or lower unit. The metal device is a "machinegun" as defined by 18 U.S.C. § 921(a)(24) and 26 U.S.C. § 5845(b). Because it is a "machinegun" under the NFA, it is a "firearm" as defined by 26 U.S.C. § 5845(a)(6). It did not bear any identification marks or serial number as required by 26 U.S.C. § 5842.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

Defendant's Initials  DN

*Donterio Raekwon Nickson*
**DONTERIO RAEKWON NICKSON**

### III.  RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

- **A.** That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

- **B.** That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the **low end** of the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

- **C.** That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject

to the Court's standard conditions of supervised release;

D. That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

E. That the defendant be required to comply with the forfeiture provisions set forth in section XII of this agreement; and

F. That the defendant pay a special assessment of **$100**, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. STATUTE OF LIMITATIONS WAIVER

In consideration of the recommended disposition of this case, I, **DONTERIO RAEKWON NICKSON** hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, **18 U.S.C. § 3161,** *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.

### B. RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, **DONTERIO RAEKWON NICKSON,** hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines,

restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1. Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2. Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3. Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

**I, DONTERIO RAEKWON NICKSON, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

*Donterio Raekwon Nickson*
**DONTERIO RAEKWON NICKSON**

## V.   UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.   AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX. COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which

the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

X. **AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION**

Defendant's Initials ___

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant's Initials DW

XII.    **FORFEITURE**

The defendant agrees to consent to the entry of a final forfeiture judgment against the defendant, pursuant to Fed. R. Crim. P. 32.2(b)(1), of all firearms and ammunition involved in or used in the commission of the offense(s) in COUNT ONE of the Indictment, including: Anderson Manufacturing AM-15 bearing serial number 22115751, any accompanying machinegun conversion device, and any accompanying magazines and ammunition. For purposes of entering said order of forfeiture, the defendant acknowledges that a nexus exists between said firearm(s) and the criminal offense(s) to which the defendant is pleading guilty.

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Indictment, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this,

pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### **Non-Abatement of Criminal Forfeiture**

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge

Defendant's Initials DN

wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

### XIII. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

Defendant's Initials DN

XIV.  **DEFENDANT'S ACKNOWLEDGEMENT**

I have read and understand the provisions of this plea agreement consisting of **19** pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

> **NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____ NONE _____

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

3/22/24
DATE

*Donterio Raekwon Nickson*
**DONTERIO RAEKWON NICKSON**
Defendant

XV. **COUNSEL'S ACKNOWLEDGMENT**

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

3/22/2024
DATE

**KENNETH J. GOMANY, ESQ.**
Defendant's Counsel

## XVI. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

3-25-24
DATE

BENJAMIN A. KEOWN, SR.
Assistant United States Attorney