FILED
2024 Aug-14 PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **7:24-CR-79-ACA-JHE** |
| | ) | |
| **DONTERIO RAEKWON NICKSON** | ) | |

# GOVERNMENT'S SENTENCING MEMORANDUM, RESPONSE TO REQUEST FOR A DOWNWARD DEPARTURE, AND RESPONSE TO OBJECTION TO ADDENDUM TO THE PRESENTENCE REPORT

The United States of America submits this sentencing memorandum for the Court's consideration in determining an appropriate sentence for Donterio Raekwon Nickson. For the reasons stated below, the government recommends a sentence within the high end of the sentencing guidelines, 63 months, as calculated in the Amended Presentence Investigation Report (PSR).

## GOVERNMENT'S SENTENCING MEMORANDUM

Nickson entered a guilty plea to Possession of a Machine Gun on April 23, 2024. The government agrees with the United States Probation Office (USPO) that the guideline range of **51 to 63 months** is appropriate in this case.

# DISCUSSION

## I. The PSR correctly calculates the guidelines range at 51 to 63 months after the removal of Acceptance of Responsibility Points.

Although the Guidelines are not mandatory, they remain "the starting point and the initial benchmark" in determining the appropriate sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). *"The Guidelines, as written, reflect the fact that the Sentencing Commission examined tens of thousands of sentences"* over many years in an effort to achieve the objectives of 18 U.S.C. § 3553(a). *Rita v. United States*, 551 U.S. 338, 349 (2007). Thus, *"it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve"* those statutory objectives. *Id.* at 350.

The PSR calculates an offense level of 24 and a criminal history category I, resulting in a Guidelines sentencing range of 51-63 months. The government agrees with the USPO that the range is correct. Furthermore, based on the Nickson's intentional continued engagement in criminal conduct, the government elects that Nickson has breached the term of his plea agreement pursuant to subsection VII of the same, and requests a sentence of 63 months imprisonment, or the high end of the guidelines. (Doc. 11 at p. 11)

## II. 3553(a) Factors.

The Court must impose a sentence that is *"sufficient, but not greater than necessary, to comply with the purposes"* of sentencing set forth in 18 U.S.C. § 3553(a). The requirement is "not merely that a sentencing court . . . be stingy enough to avoid [a sentence] that is too long, but also that it be generous enough to avoid one that is too short." *United States v. Irey*, 612 F.3d 1160, 1167 (11th Cir. 2010) (en banc). The government believes a sentence of 63 months would achieve the purposes of sentencing set forth in 18 U.S.C. Section 3553(a).

The recommended sentence appropriately reflects "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). As noted in the PSR in paragraphs 40-44, Mr. Nickson has no criminal history**.** *PSR.* at p. 12. As a result, Mr. Nickson's criminal history category level is I. *Id*. at 12.

The recommended sentence also *"reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense."* 18 U.S.C. § 3553(a)(2)(A). Those considerations reflect *"the 'just deserts' concept, which carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." Irey*, 612 F.3d at 1206. The Eleventh Circuit has explained that "[b]ecause the punishment should fit the crime, the more serious the criminal conduct is the

greater the need for retribution and the longer the sentence should be. The seriousness of the crime varies directly with the harm it causes or threatens. It follows that the greater the harm the more serious the crime, and the longer the sentence should be." *Id.*

As noted in the factual basis of the plea agreement and the PSR, this case involves the possession of a machinegun which was recovered after an investigation of multiple shootings into multiple occupied dwellings. Nickson was apprehended after video evidence showed him shooting into three separate residences using fully automatic weapons. *PSR* at p.7-9. This was later confirmed by Facebook posts that Nickson made where he posted photos of himself outside the Branscomb Apartments posing with the two AR-15 style rifles used during the shootings. The government believes that based on the information provided to the court in the PSR, a sentence of 63 months is sufficient, but not greater than necessary, to deter Nickson from further criminal activity.

A sentence of 63 months would *"afford adequate deterrence to criminal conduct"* and would *"protect the public from further crimes of the defendant."* 18 U.S.C. § 3553(a)(2)(B)-(C). "The more serious the crime and the greater the defendant's role in it, the more important it is to send a strong and clear message that will deter others." *Irey*, 612 F.3d at 1212. As stated in the PSR, Nickson shot into an occupied dwelling where the resident was asleep. In a post-*Miranda*

confession, Nickson confessed to the shootings and that he knew the firearms he possessed were machineguns. Shooting into an occupied dwelling intentionally is a crime of the most serious nature. It is necessary that the sentenced imposed on Nickson be of such a degree that would sufficiently deter future conduct by Nickson. A sentence of 63 months for Nickson who committed violent crimes while possessing a machinegun, but who has no criminal history, would accomplish this goal.

**GOVERNMENT'S RESPONSE TO REQUEST FOR A DOWNWARD DEPARTURE**

The government objects to a downward variance as requested by Nickson. In the motion titled, "Sentencing Memorandum and Request for Variance on Behalf of Donterio Raekwon Nickson,"(Doc. 17), Nickson asks for a variance to a "sentence of 30 months custody. *Doc.* 17 at pp. 4. To support this request, Nickson cites to the Judicial Sentencing Information (JSIN) database to argue for a variance from the original PSR guidelines and Nickson points out that he has was assigned a 4-point enhancement for "Specific Offense Characteristics,". The government objects to these arguments and request no variance be given to Nickson.

*Judicial Sentencing Information (JSIN) Data*

First, the government wishes to point out that the statistics referenced in this motion by Nickson do not reflect the updated statistics of the amended PSR. While

the original PSR, submitted on July 12, 2024, shows an average length of imprisonment to be 30 months, with a median length of 32 months, these do not accurately reflect the statistics pertinent to Nickson's criminal history and offense category. The amended PSR was submitted by Probation on August 12, 2024. The JSIN as reflected in the addendum shows that the median length of imprisonment for defendants with level 24 offenses and a criminal history category of I is 51 months in prison, with the average sentence imposed being 47 months.

Nickson's request for a variance to a 30-month sentence based on the original PSR's JSIN data is obsolete based on the new calculations. Furthermore, Nickson's post-plea conduct highlights why any sentence other than a high-end guidelines is insufficient to curb his continued criminal behavior and ensure the safety of the community. As such, the government requests the Court deny Nickson's request on these grounds.

*Specific Offense Characteristics*

Nickson's argument for leniency based on the PSR's inclusion of 4-points for "Specific Offense Characteristics" asks the Court to ignore the seriousness of the factual basis in the plea agreement and PSR. The government objects to this, as the facts of this case highlight the seriousness of this offense. The 4-point enhancement is authorized pursuant to USSG § 2K2.1(b)(6). Specifically, 2K2.1 states: "(6) If the defendant… (B) used or possessed any firearm or ammunition in

connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." U.S.S.G. 2K2.1.

The factual basis of this case reflects how Nickson went from residence to residence in the evenings leading up to his January 23, 2024, arrest. Nickson shot deliberately into three residences, two of which were occupied at the time. The facts show that in the Brantwood Apartments, the resident was asleep in her bed with an infant child and was awoken by a loud noise and a burning smell. It was only after observing drywall debris on her purse, which hung on her headboard, that she recognized that her apartment had been shot into numerous times. It is believed by law enforcement, that this individual was a bystander, and not Nickson's target that evening. It was also at the Brantwood complex that Nickson stopped by the mailboxes to take photos of himself with the machineguns he is charged with, which he later posted to Facebook.

Nickson's actions exhibited a willful and wanton disregard for the safety of the community and a callous intent to commit the felony offense of Shooting into an Occupied Dwelling. Nickson's actions more than exhibit the criteria of "used or possessed any firearm or ammunition in connection with another felony offense,"

thus meriting the 4-point enhancement. The government requests that the court apply the 4-point enhancement in its calculations of the Total Offense Level.

Finally, in subsequent filings, Nickson appears to abandon his request for a variance. In his subsequently filed "Defendant's Objection to Addendum to the Presentence Report," Nickson requests that the Court now sentence him within the guidelines range of the previous PSR. As such, the government requests that the Court deny the Defense's request for a downward variance and assess the 4-points for "Specific Offense Characteristics."

**GOVERNMENT'S RESPONSE TO NICKSON'S OBJECTION TO ADDENDUM TO THE PRESENTENCE INVESTIGATION REPORT**

The government opposes any points being awarded to Nickson under § 3E1.1, Acceptance of Responsibility. On July 17, 2024, the government and Counsel for the Defense received a letter titled "Jail Copier_20240717_091602" from the Court that was intercepted by a Hoover Jail Officer. This was then turned over to the US Marshalls and the Court. This letter was addressed to a woman by the name of, H.L., dated July 16, and addressed to a Northport, AL address. In this letter, Nickson expressed discontent for how H.L. was bringing another person around his child, his discontent with the lack of clothing the child has, and the cleanliness of H.L.'s home. Nickson then goes on to argue that H.L. was now in

another relationship, stating that is why H.L. only wanted to "co-parent." Nickson then goes on to state how "dis s*** goin get real disrespectful and violent when I get out" and how H.L. was keeping the identity of her new partner secret because Nickson will "put det switch on a n****," ending the letter Nickson tells H.L., "ima show you when I get out." *Nickson's Letter dated July 16th, to H.L.,* expletives redacted.

The government forwarded this letter to ATF Special Agent Joel Smith, who contacted H.L. and interviewed her. H.L. confirmed that she was the child's mother of Nickson and had received mail from him at the Hoover City Jail previously. Agent Smith completed this request and submitted a report to the government on August 8, 2024. The government then sent this letter via email to Counsel for the Defense on August 9, 2024, in discovery. The government intends to call Agent Smith at sentencing to discuss this investigation.

Based on the conduct described in the letter, the Probation Office issued an Amended PSR removing the 3-point reduction for acceptance of responsibility. Specifically, the PSR outlines that Nickson's has not "voluntarily terminated or withdrawn from criminal conduct." A position the government stands behind. Also, Probation observes, that the phrase "ima put det switch ona…" to be referencing a Glock switch, a position the government also concurs with.

After receipt of this amended PSR, Nickson next filed a document titled "Defendant's Objection to Addendum to the Presentence Report." (Doc. 18). In this document, Nickson argues that his actions satisfy the requirements under § 3E1.1 Acceptance of Responsibility and argues he should be entitled to the 3-point reduction pursuant to § 3E1.1. Nickson's motion concludes with a request to be sentenced to the "low end (as recommended by the government in the plea agreement) set forth in the original Presentence Report of 37 to 46 months." The government opposes these requests.

*Criminal Activity*

In sending the letter dated July 16, Nickson committed both federal and state offenses. Specifically, Nickson's conduct constitute violations of Alabama Code § 13A-11-8 and 18 U.S.C. § 876(c).

Alabama Code § 13A-11-8 outlines that a person commits the crime of Harassing Communications if "with intent to harass or alarm another person, he or she does any of the following: a. Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of written or electronic communication, in a manner likely to harass or cause alarm." *Ala. Code* § 13A-11-8. Violations of this statute are Class C misdemeanors. Nickson's letter clearly intends to harass and alarm H.L. and was intended to be sent via U.S. Mail. Nickson's conduct in sending the July 16th letter violated 13A-11-8 as a result.

Federally, Nickson's conduct may also be a violation of Title 18 USC § 876 (c), which states that,

> (c) (w)hoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person ***or any threat to injure the person of the addressee or of another***, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C.A. § 876 (West) ***emphasis added***. Subsection (a) outlines the requirements for "deposits" and "delivery" in stating "(a) Whoever knowingly deposits in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service or knowingly causes to be delivered by the Postal Service according to the direction thereon, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person…
>
> 18 U.S.C.A. § 876 (West).

Nickson's threat, which is neither veiled nor conditional, outlines that he wishes harm on the unnamed individual who his child's mother may now be involved with romantically. The action of reducing these threats to writing, addressing them to his child's mother, and sending them via U.S. Mail, outlines sufficient probable cause that Nickson has violated 18 U.S.C. § 876 (c). Nickson not only continues to intend to engage in the same criminal conduct he is being sentenced on before the court today but engages in further criminal conduct in expressing his continued intent to do so.

*Plea Agreement*

While the government initially agreed in the plea agreement to recommend the 3-point reduction and low-end guidelines sentence, Nickson's conduct has violated the terms of the plea agreement. The plea agreement, (Doc. 11), specifically shows the government agreeing to a low-end guidelines sentence and the 3-point reduction for acceptance of responsibility. *Doc. 11* at p. 7. However, as outlined in Section III, subsection A. the government reserved the right to oppose the 3-point adjustment for acceptance of responsibility, if Nickson "engages in any criminal conduct between the date of this agreement and the date of sentencing." Further, in Section VII of the plea agreement, Nickson understood that if he

> (a) violates any federal, state, or local law or any condition of pretrial release after entering this plea agreement… (d) violates any other term of this agreement… the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

*Doc. 11*. at 11.

Nickson's conduct in sending a threatening letter is criminal and violates both State and Federal Statutes. Nickson has not voluntarily or willingly withdrawn from engaging in criminal activity, he has continued to do so, even while incarcerated. As such, the government is not bound to recommend a low-end sentence and/or the acceptance of responsibility points reduction per the plea

agreement and does not recommend either. The government requests that Nickson be sentenced to 63 months incarceration.

*Acceptance of Responsibility Points*

Nickson's conduct does not entitle him to receive the 3-point reduction for acceptance of responsibility. The United States Sentencing Guidelines (USSG) Section 3E1.1 controls the application of Acceptance of Responsibility. This subsection is bifurcated into two sections. Subsection (a) allows for Nickson's offense level to be decreased by 2-levels if "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. 3E1.1. Subsection (b) then allows for a further 1-point reduction, if Nickson qualifies for a reduction under subsection (a), the offense level is greater than 16, and the government makes a motion.

<u>Subsection (a) 2-Point Reduction</u>

While on the face of the USSG guidelines, Nickson may appear to qualify for the 2-point reduction for acceptance of responsibility, the commentary shows his conduct in continued criminal activity undermines this. Under "Application Notes," the USSG outlines that in determining whether a defendant qualifies under subsection (a) it is appropriate to consider a list of conditions. Among those is "(1)(B) voluntary termination or withdrawal from criminal conduct or

associations." U.S.S.G. 3E1.1 (Commentary). The commentary goes on to outline in subsection (3) that:

> (e)ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) (see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a). *However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility*. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

*Id*. *emphasis added*.

Nickson is not entitled to the two-point reduction based on his own conduct. Although he did timely plea to his criminal conduct, it is evident by his continued conduct that he does not intend to cease the use of machineguns. Further, in mailing a threatening letter via the U.S. Mail Nickson has continued to engage in criminal conduct. The fact that he has engaged in this conduct by threatening to use a Glock switch is particularly disturbing as it mirrors his criminal conduct in the instant case of shooting a machinegun into three residences.

This conduct outlines facts that are inconsistent with his previous acceptance of responsibility and criminal in nature. The plea agreement makes it very clear that continued criminal conduct will result in the government's opposition to acceptance of responsibility points. The government hereby requests that the Court

not award Nickson the 2-point reduction for acceptance of responsibility based on his continued criminal conduct.

Subsection (b) Reduction

The second prong of the "3-point reduction" that Nickson requests is contingent, at least in part, on the governments' consent. As outlined above, Nickson must first qualify under subsection (a), his crime have an offense level greater than 16, and requires the government to move at sentencing for the reduction. If the government is to move so at sentencing, the guidelines requires the government to outline "that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." *Id*.

The commentary under subsection (6) states that "(b)ecause the government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the government at the time of sentencing. See section 401(g)(2)(B) of Pub. L. 108-21."

As discussed in the previous section, Nickson does not qualify under subsection (a) for the 2-point reduction. His continued criminal conduct after the

imposition of the plea is incompatible with the guideline for acceptance of responsibility. As such, the subsection (b) reduction is inapplicable.

However, if the Court finds that a reduction under (a) is applicable, the government declines to make any motion to the effect. As outlined in the plea agreement, continued conduct on behalf of Nickson will result in the government opposing the imposition of any reduction for acceptance of responsibility. Due to this, the one-point reduction pursuant to subsection (b) is inappropriate without the consent of the government.

## CONCLUSION

For the reasons stated above, the government recommends a sentence of 63 months. The government also asks the Court to deny Nickson's Motion for Downward Variance and Objection to Amendment to the Amended PSR.

Respectfully submitted this the 14th day of August 2024.

PRIM F. ESCALONA
United States Attorney

/s/ *Electronic Signature*
Benjamin A. Keown, Sr.
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

This is to certify that on the 14th day of August 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defendant's attorney of record.

*/s/Electronic Signature*
Benjamin A. Keown, Sr.
Assistant United States Attorney